All right, we'll now have argument in Innovatus Capital Partners v. Clark. Okay. We'll begin with Mr. Kylus. Am I saying that right? Mr. Kylus? I'm right once in a while then, I guess. Okay, I think it's only fair that we'll give you guys about 50 minutes each. I'm joking. No, no. I'm just going to try to get organized. Yeah, and I'm going to try to enforce the time limits this time around. But I think this is a small case. That should be manageable. I hope so. Yeah, you may proceed. May it please the Court, Leo George Kylus on behalf of the appellant. The focus of appellant's claim is the non-circumvention language of the nondisclosure agreements, which was ignored by the Court below. The non-circumvention language is very broad in all four nondisclosure agreements signed by the parties. The first sentence says the receiving parties agree not to circumvent the disclosing party, the receiving party by the appellees. The second sentence says the receiving parties further agree not to undertake any transaction or a series of transactions of any kind in connection with the business opportunity without the express written agreement of the disclosing party, which agreement may be withheld in the disclosing party's sole discretion. The prohibition in the second sentence referring to the appellees not undertaking any series of transactions of any kind has to refer to the right to list forward contracts. That's what it refers to. And how do we know that? That's the only reasonable interpretation of this language, because that is the responsibility the appellees exclusively assumed under the Joint Venture Summary of Indicative Terms Agreement. That's A56 to A59. That document was signed at the same time as the first nondisclosure agreement, August 24th, 2017, and it certainly assists in determining the intent of the parties in the non-circumvention prohibition. The parties were not concerned about the appellees securitizing the right-to-list agreements they harvested. That was the right that was exclusively reserved to innovators under the signed joint venture terms. The signed joint venture terms said you appellees have the exclusive right to sign right-to-list agreements. You innovators have the exclusive right to securitize. And that's a signed agreement and it's an enforceable agreement. The prohibition had to apply to the right-to-list task exclusively assigned to the appellees under the joint venture agreement. Now, in order to show that the decision below dismissing the appellant's claim is wrong, we need to refer to the facts averred by appellants in the complaint, which must be accepted as true for purposes of this appeal. Can I just back up for a second? Sure. On the issue of mutual mistake, it seems not to have been raised by any of the parties argued, and there was no motion of reconsideration for reconsideration filed after the district court decided the case on that basis. How did this come up, mutual mistake? I was not the counsel down below, Your Honor. It was raised by Judge Stanton on his own, sua sponte. Were the parties even given a chance to convince him that he was wrong about that? Not to my belief, sir. How about a motion to reconsider? Why wasn't one filed saying, we'd like to be able to talk to you about this, Your Honor? I was not involved at that point, so I can't say why the motion to reconsider wasn't presented to the court. The appellant in OVEDIS is an investment advisor and portfolio manager. They approached the appellees who were involved in the real estate brokerage business in mid-2017 with a new and novel business opportunity. The opportunity was to join with OVEDIS to be the first in the market in the United States to sign forward right-to-list contracts with real estate owners and to then, if a sufficient number of these contracts were signed, to securitize them. You used the phrase, first in the market. Where is that coming from? The complaint? Or is that just a phrase you're using now? It's in the complaint. First in the market. It's a... I'll take your word for it. Okay. And so the existence of a patent from a decade earlier wouldn't alter the first in the market aspect of this business opportunity. Not at all, sir. Not at all, sir. But is it agreed that nobody knew about the Harrington patent until that November? I mean... Until November. At the time of the first NDA, it sounds like nobody knew about this patented approach. Right. But then you all became aware of it sometime during the course of that year, but there were still some NDAs signed after people were aware of it? Yes. Yes. I mean, it's not even clear to me that this would be patentable, but... They did a process patent, which, you know, it's a much broader patent than just applying to these right-to-list forward contracts. It was mortgages. It was just a broad, and they did it. They presented it as a process patent, which not all people believe would withstand a challenge. It's never been tested as to whether it's even a valid patent. No, sir. A patent that wouldn't be challenged. No. And it's admitted, and there is no dispute in the record that we were the first in the market. We presented this idea to be the first in the market, and that we presented it to the appellees. The appellees did not know about this business opportunity before Innovatus approached them. And despite their involvement in the real estate brokerage business, appellees had never thought of doing these types of transactions until Innovatus came along and disclosed the idea to them. Well, how do you know that? That's... That's in the record. They had never explored doing this. But it's in the record. What record? It's in the complaint, and that we were, when we approached them, they did not know about this. Well, I mean, it's in the complaint, but the complaint is, it just sort of states conclusively that they didn't know about it, right? Yeah. And it's at page 7 of our reply, of our reply brief. The reference is to that. Of our principal brief, I'm sorry. The later NDAs were changed a bit, too, right? As to what's the opportunity? Yes, they became broader. They said related to any real, all three of the subsequent NDAs said anything, the business opportunity was anything related to the real estate business. And so they were much, and they were signed by employees of the appellees, including a 50 percent owner of the appellees. So. Following up on Judge Sullivan's questioning, though, this is all based on the complaint. I mean, there's no, this was not summary judgment, right? No. We had no, it was on the face of the pleading. So you have to accept our pleading as true in deciding whether to dismiss the claims. I mean, so just your point is that the mutual mistake that was found by Judge Stanton, based on the pleadings is not sufficient to say that the non-circumvention provision of the contract was void, right? Right. That's exactly right. Even if it may have been voidable, but it's certainly not fleshed out with any discovery or anything else as to how central this was to the agreement. That's exactly right. Now, there's also a nondisclosure component to the agreement that covers, among other things, materials created or shared in the process of this joint venture. And so there is a claim for breach of contract related to the appellee's improper use of those materials. That's exactly right. And that was never dealt with. Well, the complaint was dismissed in its entirety. Yes. Never dealt with. Without any real explanation as to what was happening with those claims. None. And to be clear, the Harrington patent was almost beside the point with respect to everything that we disclosed, the analyses, the market studies, the plans that we developed in order to bring this to market. And, I mean, among the things, the fact that no one in the market was engaged in the right to list forward contracts and that the joint venture would be the first to do it. Confidential studies and analyses that showed the viability of this opportunity. A business plan for commercializing the business opportunity that included tracking metrics, marketing techniques, and a financial model. The creation of the right to list contract that would protect both MV Realty and Innovatus. And then working together, they worked together for eight months to develop this plan. And during that eight-month period, the Harrington patent was disclosed, and they subsequently then signed a broad NDA and non-circumvention for one of the new employees, the guy who was going to become the CFO of the joint venture. None of this information, which is valuable proprietary information, is in the Harrington patent. It's a very general patent. And Innovatus is entitled to the contractual nondisclosure and non-circumvention protection that it bargained for to obtain from the appellees. But what you're really saying is that you're entitled to at least test that out. We are. Through discovery. Yes, we are. And perhaps a trial. Yes. All right. Anything else? I think we get the point. Okay. But if you have something else that you want to say. I'm going to reserve a little time at the end, if that's okay. Thank you. You reserved two minutes. I did. Thank you. Okay. Thank you. Now we'll hear from Mr. Rauhfeld. I apparently didn't get that one right. Surprisingly, you did, Your Honor. Really? Rauhfeld. All right. Mr. Rauhfeld. May it please the Court. Jason Rauhfeld for the appellees. The district court here correctly found that the agreement was unambiguous in two independent respects that are both fatal to their claims in this case. First, the NDA itself defines the business opportunity as purchase and subsequent securitization, and that is consistent with the incorporated term sheet, which says that Innovata shall be the exclusive distributor of the securities. Second, the NDA includes a robust exclusion provision, which excludes information in the public domain from the scope of the NDA. The district court found that my clients are not prohibited from paying for option contracts for the right to be someone's real estate broker in the future without any securitization, and that activity, which really just involves telling someone I'll pay you $1,000, sign a contract saying I get to be your broker, that activity was disclosed a decade before the NDA in the public through the Harrington patent, which my clients now have a license to from the person who patented that. And third, the district court independently found, as the Court has recognized the mutual mistake, a fact issue. The district court found that the argument, the interpretation of the agreement that was proposed by the appellant by Innovatas, that alternative interpretation would have rendered the agreement voidable, void. Breyer. Well, voidable and void are not the same thing. They are not, Your Honor. And the judge voided it, right? The judge – what the judge did was said, actually, that if their interpretation were right, it would void. And the specific quote for that, Your Honor, that the district court used, was that it would void, it would void, under an appellant's interpretation, it would render void any interpretation of the NDA that would bar RTLs, which are these option contracts. But it was based on the Harrington patent, though, right? His decision was, you know, the whole basis for this is what was in the Harrington patent, and so there's a mutual mistake because nobody knew about the Harrington patent. That's kind of the upshot of that decision, right? Well, let me clarify. I think there was a question earlier about how did this come up, what raised it. And, of course, our position is that this is the third issue. The court – this court doesn't have to reach this issue unless it decides against my clients on the other two contract issues. In the litigation, and this is the context, this is all in the record, this is the context to explain how this came about, why this was on Judge Stanton's mind. In the litigation, the Harrington patent and the subsequent discovery that this business opportunity was in the public domain became a very big part of the proceedings. So Innovatis and the parties agreed, and Innovatis agreed, that the patent placed the entire business opportunity into the public domain long before the NDA. In addition, Innovatis asked the district court to seal the record and require my client to delete from its complaint any reference to the Harrington patent, even though the Harrington patent was in the public domain. And there was a lengthy hearing about that, and Judge Stanton was rather incredulous, I would say, that he was being asked to seal a record and require deletion of any reference to the Harrington patent. In addition to that, they took the position that my clients, having subsequently during the course of the litigation entered into a license to that patent, was somehow nefarious. And finally, the parties agreed, and it was Innovatis' position, they were saying, if you can imagine the circumstances here, it was saying, we didn't intentionally mislead them at the time of the NDA. We were honestly mistaken. We didn't know that there was a patent there. And so with all of that activity going on, we did not argue mutual mistake effect. To be honest, we didn't see any reason to argue that, because in our view the contract in two independent respects was clear on its face, as the district court found. But with all of that going on in the litigation, when we received the opinion, Judge Stanton said, and the language that he uses is that their interpretation would void any reading of the agreement that would prohibit the independent pursuit of RTLs, the option contracts. So that's how, Your Honor, this issue came into this case. That's why it was at the forefront of the Court's mind. But it's not even pled as an affirmative defense, right? I'm sorry, I didn't hear you, Your Honor. It's not even pled as an affirmative defense. There's, I think, eight affirmative defenses in the answer. That is correct, Your Honor. We, again, saw no reason to assert affirmative defense that involves trying to avoid the application of a contract that is clear on its face in two independent respects. And so we did not. Judge Stanton found that the business opportunity is a term of art expressing the idea of combining both the RTL and securitization endeavors. But the business opportunity is more than just an idea. The business opportunity described here is about effectuating an idea and bringing to market a business. And so I think isn't that the fatal error, in his opinion, with respect to even before we get to mutual mistake? Do you think the business opportunity is just an idea? I think the business opportunity is what it is defined in the contract. This is a case, Your Honor, dealing with the interpretation of a contract on its terms, and Judge Stanton found that the contract was unambiguous. And if I may, it's not just the NDA. It's the term sheet. They are both on their terms, very clear, that the NDA says it will involve the purchase and subsequent securitization. Innovatis is arguing that they would like to delete the words and — well, what they're saying is they want to change and to or. If you change and to or, you have effectively deleted the words and subsequent securitization. I mean, I'm not — that's not obvious to me. I know that was in the briefs. But it seems to me that this business opportunity involves a series of transactions, some involving one party, some involving the other, some involving both. But that, you know, some of those — you can't do any of the transactions that are covered by this business opportunity without complying with the non-circumvention provision. That's what it seems to be. Do you think that's wrong? I do, Your Honor. Okay.  So I think it's important, Your Honor, to keep in mind that this is a predisclosure NDA. So my clients operate a local real estate brokerage in South Florida. And Innovatis required them to sign a predisclosure NDA. That means — and this is undisputed in the record, and not just in the complaint or one side or the other, completely undisputed in the record — that that means that my clients did not know what it was that Innovatis was going to disclose. Okay? And the agreement that they received that they were asked to sign said that they'd be giving up the right to do something involving real estate. And they're in the real estate business. But when they read the agreement, both the NDA and the term sheet said it would involve purchase and securitizing. And they knew they weren't doing any securitizing. Wait. Who knew they weren't doing any securitizing? My clients are a real estate brokerage. Right. But, I mean, I think the complaint here is basically saying that your client is now doing the RTL part of this with a view towards partnering with somebody else or doing it themselves on the securitization, right? Yeah, Your Honor. That's not in the record. Well, I mean, at this point, the record is really just the complaint. And so, look, you might win on all of these things, it seems to me, at trial or on summary judgment. But right now they're alleging that you've breached the contract in a couple of ways. One is by taking those steps, the early stages or series of transactions necessary to effectuate this business idea. That's one. Without giving them the opportunity to be involved. And the other is that you're using the documents they gave you pursuant to this agreement to develop this new project, which you can't do. I'll answer those first. Okay. The documents that they've raised in their briefs and they say the court didn't deal with below, the court gave complete protection. If I may explain. No, the court dismissed the complaint. Well, actually, no. The court, if you read the court's opinion, Your Honor. I've read it. I've read it. The conclusion is that disposes of all points in the submissions of the parties. And it says MV is free to engage in the RTL business without securitization but may not utilize or disclose materials or techniques not otherwise in general  Exactly. Your Honor. They're saying that's exactly what you're doing. Your Honor. Well, the complaint alleges that you're doing that. Your Honor, if I may answer that. Sure. First of all, if the complaint was alleging that, Judge Stanton's order prohibits it. It gives them complete relief. The materials that they're talking about, Judge Stanton's order, says that my clients may not utilize or disclose materials or techniques. Those are the materials that they talk about in their complaint. If I may. They just want an injunction, right? I'll ask them in a minute, but I don't think the complaint was limited to just an injunction. I think they want damages, too. Well. Has their damage claim been covered by this order from Judge Stanton? So, Your Honor, combining that with your earlier question about are they doing, you know, You said they had complete relief. That's why I asked. Yes. On those materials, what the court did was it prohibited my clients from using any materials that they provided that are not in the public domain, which are the only materials, the only thing in this case that is confidential, the only thing that is confidential. But, I mean, that's disputed. All we have is a complaint at this point. That's what that is. All we have is a complaint. It seems to me that we've sort of short circuited the whole process, but I'm not sure we get to the judge gets to do that. Well, Your Honor, I don't think that that's correct. I think that the judge gave them what they were asking for, which is that my clients which this deal had broken down when they came to court, and the judge ordered that my clients should not use those materials. And, frankly, my clients didn't care. But if I may have one point on those materials, Your Honor. Their complaint, and this is at paragraphs, it's at A3. Well, it's the third paragraph in the 21st paragraph of their complaint, Your Honor. They say very explicitly that there were no materials that existed at the time of the NDA, that the parties created materials working together in the 8-month period. My clients in the litigation did not choose to dispute whether parties created jointly by the materials after the contract could be designated as confidential subjects of the agreement. My clients didn't choose not to dispute that. And my clients agreed with the district court when he – when – I don't know what it means to say you chose not to dispute that. You didn't even answer the complaint, right? We did answer the complaint, Your Honor. Oh, all right. You absolutely did answer the complaint, Your Honor. You didn't assert a mutual mistake defense. We did not, Your Honor. This was a 12C motion. Is that right? In the MV case. If I may just add one last point in response to your earlier question. Sure. Their complaint, what their complaint alleged was you could not tell anything about what is going on in this case in the complaint that they filed. They alleged that there was a, quote, business opportunity. They didn't say one word about it. They were trying to keep the contract out of the public docket without sealing, so they just said there's a business opportunity and they're doing it. They didn't say what it involved in any way, shape, or form. Everything that the court has read in these briefs came about because my client said, wait a second, we have a right to put this before the court, so we filed a declaratory judgment motion. And that's how those materials came in. They didn't – they act as if these confidential materials were the thing that they were trying to protect. That's not at all true. When my client filed the complaint, it didn't refer to confidential materials, and yet they wanted our complaint sealed and redacted. What they wanted to keep out of the public record was the business opportunity. All right. But the complaint alleges that plaintiffs generated and disclosed to defendants certain non-public analyses and information subject to confidentiality restrictions set forth in the NDAs. They say they gave you stuff that you didn't have before, that they prepared for this purpose, and that you're using it now. That's what they allege. I don't have the paragraph. But it seems to me that the dismissal of the complaint has ignored that portion of the complaint. Yes, Your Honor. What their complaint in the third paragraph as well as the 21st paragraph of their complaint, they allege that those materials were created jointly by the parties in the months that followed the NDA. What I just read, you didn't say that. All right. We'll take a look at it. It's record A13, paragraph 3, which says that pursuant to the parties working together in the period that followed, and then it's in the record. Right. Engage in extensive planning, development, and other joint actions to pursue the business opportunity. And then on A17. As part of this process, plaintiff generated and disclosed to defendants certain non-public analyses and information. Yes. And on A17, paragraph 22, as part of this collaborative process, they do say innovatus created and disclosed. But it was while the parties were working together. Those are the only materials in this case that are confidential. They're the only information whatsoever in this case that is confidential. And that is the — those are the materials that my clients are not using and were ordered not to use. All right. Mark. Let's hear from Mr. Kailas. Just very briefly, you know, the horse is out of the barn. You can't take back all these analyses, all these business plans and everything else that was disclosed to them and that we asked for protection for and damaged damages for in the counterclaim that we asserted. That is in our counterclaim, the request for damages. The other thing I said that I would find where we had asserted that we were the first to market and that this was part of the business opportunity, that's at page 8 of our main brief. And the references are to A14, paragraph 6, A16, paragraphs 18 to 19. The other thing that — if the Harrington patent is so important, what does the Harrington patent disclose? Forward right-to-list contracts and securitization. But that's disclosed on the face of the nondisclosure agreement. So they had that information before they put their John Hancock to that document. It says, whereas the parties wish to explore the business opportunity related to the purchase and subsequent securitization of real estate-related forward contracts, the business opportunity which will involve the disclosure of confidential information. It's right in the document. It's on the face of the document. So the Harrington patent is really besides the point here. It has no impact. And we did provide, as Judge Sullivan pointed out, all these confidential analyses. The right-to-list contract is something that we helped them on. So all of this can't be retrieved. It's already there. And we had asked for damages as a result of the misappropriation of that information. And I think I can rest at that. Thank you. Breyer. Okay. Well, thank you both. We'll reserve judgment. Roberts. May I ask for one sentence? Because I did not argue that. One sentence? I'll give you one sentence. One sentence. Judge Kears is going to kill me. This is the sentence that Innovatus, on that point he was just starting, this is the sentence that Innovatus set in the record to the district court at A-271. They explained why the NDA does not talk about business opportunity. Quote, real estate forward contracts is not something that has a commonly understood definition. It is not apparent from that what the business opportunity is. Thank you, Your Honor.